IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2006

## STATE OF TENNESSEE v. ERIC MAXIE

**Appeal from the Criminal Court for Shelby County**
**No. 05-00820      Chris Craft, Judge**

_____

**No. W2006-00604-CCA-R3-CD  -  Filed March 26, 2007**

_____

Indicted for rape of a child, the defendant, Eric Maxie, was convicted by a Shelby County Criminal Court jury of aggravated sexual battery. He appeals and challenges the sufficiency of the convicting evidence. Because the record supports the jury's verdict, we affirm the conviction.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Robert Wilson Jones, District Public Defender; and Trent Hall and Tony N. Brayton, Assistant District Public Defenders, for the Appellant, Eric Maxie.

Robert E. Cooper, Jr., Attorney General & Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Vanessa King, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Tosca Moore testified that she allowed A.B.,[1] the victim, age eight, and her mother to live with her in her townhouse for a few weeks starting in December 2003[2] due to A.B's mother's financial problems. She testified that because of limited space, A.B. shared a bedroom and a bed with her daughter, age seven. One night when A.B.'s mother was out, Ms. Moore put the children to bed. After some time, she heard the girls whispering, and she entered the bedroom, intending to make them go to sleep. She testified that the blankets were pulled up to the girls' necks, which was unusual for her daughter. When she adjusted the blankets, she noticed that the girls had their

---

[1] It is the policy of this court to refer to victims of sexual abuse by their initials.

[2] She testified, "December 2004," but all other testimony indicates December 2003.

nightgowns pulled up to their necks and were not wearing panties. She explained that her daughter always sleeps in her panties.

Ms. Moore sent her daughter to her room and instructed A.B. to go to sleep. She waited an hour before questioning her daughter. She then spoke with her sister, who also lived with her, seeking advice on when and how to talk to A.B.'s mother. Ms. Moore decided to talk to A.B.'s mother the next evening. She told A.B.'s mother to determine how the victim learned the behavior because, in her experience, "children didn't just think up those actions, that they're usually shown to . . . children."

On cross-examination, Ms. Moore explained that the girls did not share a bedroom after the incident. She further explained that she waited until the next evening to talk to A.B.'s mother, taking time to process the situation and making sure that she "took the proper steps and that [she] really understood [the situation] and wasn't blowing it out of proportion."

A.B.'s mother testified that after Ms. Moore reported the behavior, she questioned A.B., and as a result of A.B.'s answers, she contacted A.B.'s father. She then took A.B. to the Memphis Police Department East Precinct and filed a complaint against the defendant, who she had dated from November 2001 to April 2003, when they amicably parted ways. There she was told to take her daughter to the Memphis Sexual Assault Resource Center (MSARC) for a physical exam and to the Child Advocacy Center to give a statement. Sometime after taking A.B. to MSARC, A.B.'s mother confronted the defendant. A.B.'s mother further testified that over one year later, the authorities contacted her regarding the case. She testified that at the time of trial, A.B. was emotionally stable and a "B/C student."

On cross-examination, A.B.'s mother testified that she went to the police department around the first of December approximately two or three days after her discussion with A.B. She neither recalled with whom she spoke nor whether the interview was taped. She did not take A.B. to MSARC and Child Advocacy Center until the middle of January because A.B.'s father, who lived out of state, had already made arrangements for A.B. to visit him during the Christmas Holidays. A.B.'s mother testified that approximately one year later law enforcement officers knocked on her door looking for the defendant, and she was confused about why they were looking for him at her new address.

A.B. testified that she was born on January 5, 1996, and she remembered getting in trouble the night Ms. Moore separated her from Ms. Moore's daughter. When her mother talked to her about this incident, A.B. told her that she learned the behavior from the defendant. She testified that the defendant lived with her mother in Memphis at an apartment.

A.B. testified that one morning when her mother was at work, A.B. entered her mother's bedroom to watch television. She testified that the defendant was in the bedroom wearing a t-shirt and underwear. He instructed A.B. to disrobe, and she refused. After he said that he would do it for her, she complied, removing her "footy pajama[s]." She testified that the defendant then

went to the bathroom, removed his underwear, and that he then "put his private in mine" while they were lying on the bed. She testified that the defendant also touched her buttocks with his hands and mouth, her mouth with his lips and tongue, and her vaginal area with his hands, mouth, and penis.

A.B. stated that she refers to male genitalia as "nuts" or "private" and that she also knows what a penis is. She described the defendant's penis as being round, at least two and one-half inches long, and round on the top. A.B. testified that she was referring to the defendant's penis when she said "his private." She stated that her "private" was her vagina and that the defendant put his private not on the outside of the vagina where the skin is but "inside." A.B. testified that she asked the defendant to stop and cried. She further explained, "It felt like somebody was just taking a knife and stabbing me with it for no reason." A.B. testified that she did not tell her mother because the defendant said "that he would take a knife or a gun and kill [her and her mother]." She also testified that this happened more than once, but she did not remember how many times.

On cross-examination, A.B. testified that the abuse occurred during the time period when the defendant lived with her mother. She testified that, during this time period, she visited her father out of state, attended school, and went to church. A.B. did not tell anyone of the abuse until Ms. Moore caught her and her friend in bed. A.B. testified that she went to the police and to the doctor after she told her mother.

Memphis Police Department Sergeant Bridgett White, a member of the sex crimes and child abuse unit, testified that she was assigned to the defendant's case in December 2003, along with the Department of Children's Services (DCS). She testified that DCS obtains the victim's statement, and she is responsible for obtaining the defendant's statement if possible. Sergeant White testified that the DCS investigator scheduled A.B.'s forensic interview. After the interview, the results were relayed to her, and she attempted to contact the defendant via two different certified letters. Once the letters were returned to her with no reply, Sergeant White contacted the Attorney General's office, seeking an indictment.

Rochelle Copeland, a forensic nurse practitioner and coordinator of MSARC, testified that A.B. was physically examined at MSARC by Anita Boykins, another forensic nurse practitioner, who no longer worked at MSARC. She testified that standard procedure requires a report on each patient, and Ms. Boykins prepared such a report for A.B. Ms. Copeland explained that the results of the physical exam showed a chronic injury to A.B.'s hymen. She explained that "[c]hronic means an injury that [has] healed. It [is not] an injury [that occurred] over and over." She further testified that this injury was classified as a "2-B," meaning a nonspecific injury. Ms. Copeland explained that an injury is classified as "nonspecific" either because of the injury's location or some other medical condition, such as infection.

On cross-examination, Ms. Copeland testified that at the time of the exam, A.B. was eight years old. She explained that a classification of "3-A" or "3-B" would indicate actual penetration of the vaginal vault, not necessarily the labia or the hymenal area. She testified that no follow-up treatment was recommended.

On redirect examination, she testified that when classifying an injury, penetration is considered penetration of the vaginal vault. A.B.'s classification of "2-B" does not necessarily mean that it is inconsistent with penetration of the labia.

After Ms. Copeland's testimony, the State rested its case, and the defendant presented no proof. The State elected to prove the indicted offense of rape of a child by actual penetration by the defendant of A.B.'s vagina. *See* T.C.A. § 39-13-503(a) (2006) (establishing penetration as an element of rape); *see also id*. § 39-13-522 (increasing felony classification of rape offense when the victim is less than 13 years of age). Although the jury acquitted him of rape of a child, the defendant is vexed that the jury accredited the victim's testimony to the extent that it found an assault equating to aggravated sexual battery. Thus, on appeal, he challenges the sufficiency of the convicting evidence.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). The rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

In determining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*. at 835.

"Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: . . . The victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4) (2006). Aggravated sexual battery is a Class B felony. *Id*. § 39-13-504(b).

> "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

*Id*. § 39-13-501(6).

On appeal, the defendant in essence complains that the evidence is insufficient because the State offered no physical proof of assault other than A.B.'s testimony, which the defendant claims was discredited by Ms. Copeland's testimony. A.B.'s testimony, if believed, was direct evidence of assault corroborated by the physical examination's finding. In reviewing the sufficiency of the convicting evidence, we neither resolve credibility issues, make inferences, nor usurp the jury's factual determinations. Our role is to determine whether the evidence, in the light most favorable to the State, factually establishes the elements of the conviction offense. The evidence showed that A.B. was less than 13 years of age at the time of the assault and that the defendant touched A.B.'s vagina with his penis for sexual arousal or gratification. Therefore, the jury could have found the essential elements of aggravated sexual battery beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson*, 443 U.S. at 324, 99 S. Ct. at 2791-92; *Winters*, 137 S.W.3d at 654; *see also State v. Charles Brandon Hanner*, No. M2005-01944-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Nashville, June 8, 2006) (holding the evidence sufficient to prove aggravated sexual battery when jury rejected victim's testimony of penetration but accredited testimony of sexual contact).

For the foregoing reasons, we find the evidence sufficient and affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE